DAVID M. BECKWITH (CSB NO. 125130)
davidbeckwith@sandiegoiplaw.com
JAMES V. FAZIO, III (CSB NO. 183353)
jamesfazio@sandiegoiplaw.com
TREVOR Q. CODDINGTON, PH.D. (CSB NO. 243042)
trevorcoddington@sandiegoiplaw.com
SAN DIEGO IP LAW GROUP LLP
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 792-3446
Facsimile: (858) 408-4422

Attorneys for Plaintiff,
GREEN FITNESS EQUIPMENT COMPANY, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Green Fitness Equipment Company, LLC, a California limited liability corporation,

Plaintiff,

vs.

Precor Inc., a Delaware corporation; 24 Hour Fitness USA, Inc., a California corporation; and DOES 1-10, inclusive,

Defendants.

CASE NO. '17CV0245 AJB KSC

**COMPLAINT FOR:**
**(1) PATENT INFRINGEMENT – 35 U.S.C. § 271;**
**(2) CORRECTION OF INVENTORSHIP – 35 U.S.C. § 256;**
**(3) FALSE ADVERTISING – 15 U.S.C. § 1125**
**(4) CALIFORNIA COMMON LAW UNFAIR COMPETITION;**
**(5) CALIFORNIA STATUTORY UNFAIR COMPETITION;**
**(6) DECLARATORY RELIEF; AND**
**(7) CONSTRUCTIVE TRUST AND ACCOUNTING**

**DEMAND FOR JURY TRIAL**

Plaintiff Green Fitness Equipment Company, LLC (collectively, "***GFE***" or "***Plaintiff***"), by and through its attorneys, makes and files this Complaint against Defendants Precor Incorporated ("***Precor***") and 24 Hour Fitness USA, Inc. ("***24 Hour Fitness***") (collectively, "***Defendants***"). In support of this Complaint, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*; correction of inventorship of a patent under 35 U.S.C. § 256; false advertising under § 43(a) of the Lanham Act (codified as 15 U.S.C. § 1051, *et seq.*); and related state and common law causes of action.

**THE PARTIES**

2. Plaintiff GFE is a California limited liability corporation with a principal place of business at 2683 Via De La Valle, Ste. G-319, Del Mar, CA 92014.

3. Defendant Precor is a Delaware corporation with a principal place of business in Woodinville, WA. Precor is a subsidiary of Amer Sports Corporation.

4. Defendant 24 Hour Fitness is a California corporation with a principal place of business in San Ramon, CA. 24 Hour Fitness also has a processing center located in Carlsbad, CA.

5. GFE is ignorant of the true names and capacities of the parties sued herein as DOES 1 through 10, inclusive, whether individual, corporate or otherwise, and therefore sues these defendants by such fictitious names. If applicable, GFE will seek leave to amend the complaint to assert their true names and capacities when they have been ascertained. GFE is informed and believes and based thereon alleges that all defendants sued herein as DOES 1 through 10 are in some manner responsible for the acts and omissions alleged herein.

**JURISDICTION AND VENUE**

6. This Court has original and exclusive subject matter jurisdiction over

this action under 28 U.S.C. §§ 1331 and 1338(a) because GFE's claim of patent infringement, correction of inventorship, and false advertising arise under the laws of the United States, including 35 U.S.C. §§ 256 and 271, and 15 U.S.C. § 1125(a). This Court has supplemental jurisdiction over GFE's state and common law claims under 28 U.S.C. § 1367(a) because the state and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7. This Court has personal jurisdiction over Defendants because they reside in this District and have a continuous, systematic and substantial presence in this District, because they regularly conduct business and/or solicit business within this District, because they have committed and continue to commit patent infringement in this District, including without limitation by selling, offering for sale, and/or using infringing products in this District and by purposefully directing activities at residents of this District, by Precor placing infringing products into the stream of commerce with the knowledge that such products would be sold and used in California and this District, by Precor knowingly releasing misleading advertisements in California and this District that deceive consumers in California and this District, all of which acts form a substantial part of the events giving rise to GFE's claims.

8. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because Defendants have done business, have infringed, and continue to infringe United States Patent No. 8,884,553 within this District, and by Precor purposefully directing misleading advertisements to deceive residents of this District, and this action arises from transactions of that business, that infringement, and those advertisements. In addition, venue is proper because GFE resides is in this District and suffered harm in this District. Many pertinent witnesses including third party witnesses are also located in this District.

///

## FACTUAL BACKGROUND

### I. GFE's Patented Treadmill Saver®

9. GFE is an innovative health and fitness company focused on preventative maintenance of exercise equipment. Exercise equipment such as treadmills require regular preventative maintenance to ensure efficient, consistent, and safe operation. When a user exercises on a treadmill, stress and load are created with every step. In addition, dust, dirt, and debris accumulate in various treadmill components such as the belt, the deck, and rollers causing addition friction. To compensate for the added friction, the motor draws more electricity, which produces undesirable heat. As the usage and friction increases, the lubrication wears out, and more friction and stress are loaded on the treadmill's components. This increased friction and stress causes inefficiencies and ultimately requires the motor to draw more power, i.e., current, to be able to perform and maintain the speed of a well lubricated and maintained treadmill. The added current and friction increases the amount of heat generated. Excessive heat leads to damage or failure of electronic circuitry and mechanical parts. In addition to excessive and costly power bills, repair or replacement of treadmill components is expensive. Moreover, treadmill component failure can occur suddenly and cause serious injury to a user, and create liability for a health club operator. *See, e.g.*, *Guerra v. Howard Beach Fitness Ctr., Inc.*, 934 N.Y.S.2d 34 (Sup. Ct., Kings Cty. 2011) ("Falling off of a treadmill due to a malfunctioning tread is not a commonly appreciated or foreseeable risk which is inherent in exercising on a treadmill.").

10. To address the unmet need for a diagnostic solution for treadmills and other fitness equipment, GFE developed its flagship product, the Treadmill Saver®. A treadmill's energy consumption is directly related to its "health." If the motor pulls more energy than it should, it is a direct indication that something is wrong. The more energy the motor needs, the hotter it gets. Heat destroys electronics and ultimately the treadmill. The more energy the motor pulls, power bills increase.

11. The Treadmill Saver takes the guesswork out of preventative maintenance while reducing costly service technician calls and power bills, alerting health club operators early in problem life-cycle, and satisfying treadmill users by monitoring electrical consumption and visually indicating the health of a treadmill. Like a traffic light, the Treadmill Saver (shown below) glows green (normal), yellow (check), or red (repair) when a treadmill needs various levels of attention. This "active status light" acts as an early warning system to help health club operators identify maintenance needs before negative events happen, reduce their energy footprint, ensure user safety, and satisfy customers.




12. On October 19, 2011, GFE filed United States Patent Application No. 13/277,169 ("the '169 application"), covering its Treadmill Saver. On November 11, 2014, the United States Patent and Trademark Office (PTO) duly and lawfully issued United States Patent No. 8,884,553 ("the '553 patent") from the '169 application, entitled "Current Monitor for Indicating Condition of Attached Electrical Apparatus." A true and correct copy of the '553 patent is attached hereto as **<u>Exhibit A</u>**. GFE owns all rights to the '553 patent via an Assignment, which was recorded at the PTO on February 4, 2015 at Reel/Frame 034886/0691.

## II. GFE and its Treadmill Saver Disrupt the Treadmill Industry

13. GFE introduced its breakthrough Treadmill Saver during the March 2012 International Health, Racquet & Sportsclub Association (IHRSA) trade show held in Los Angeles, California. The IHRSA trade show is the largest health and fitness trade show in the United States and allows exercise equipment manufacturers to demonstrate the newest and cutting-edge, state-of-the-art fitness technology to health club operators. The Treadmill Saver was exhibited at the trade show and received much attention from fellow trade show exhibitors including, but not limited to treadmill manufacturers Precor, Life Fitness, Star Trac, Technogym, and Woodway. The Treadmill Saver products exhibited at the trade show were prominently marked with “patent pending.” In its April 2012 issue, Club Solutions Magazine declared the Treadmill Saver as one of four “Cool Products of IHRSA” and noted that the Treadmill Saver “provides monitoring of needed maintenance of treadmills before repairs are required.”

14. Upon information and belief, around 2012, some treadmill manufacturers were generally not interested in and strategically shied away from incorporating treadmill saver technology into their treadmills. Instead, manufacturers relied on treadmills having to be replaced every six to eight years, if not sooner for high traffic health clubs, which generated significant recurring revenue. Treadmill saver technology was viewed as negatively impacting revenue because legacy treadmills using such technology would last longer; owners would prefer to detect and fix potential mechanical and electrical issues cheaply rather than replace a treadmill at significant cost. Manufacturers made their money selling new treadmills, not maintaining used treadmills. In fact, treadmill maintenance and refurbishing is generally facilitated by third party service and repair companies, not the manufacturers.

15. One non-conforming company, Noritsu America Corporation, which was the largest fitness service company in the United States at the time, saw the

Treadmill Saver as a must have for any gym and bought the first pallet of Treadmill Savers off the production line and proceeded to enter into a strategic partnership with GFE to support all of its treadmills under contract.

16. Between March and October of 2012, numerous health club owners and operators marveled at the Treadmill Saver and recognized its benefits, particularly the electricity costs they could save by early detection of treadmills that were starting to operate inefficiently and thus, consuming unnecessary current and increasing their operation costs and decreasing profits.

17. At the October 2012 Club Industry trade show held in Las Vegas, Nevada, GFE again exhibited its Treadmill Saver to treadmill manufacturers and health club operators. The Treadmill Saver products exhibited at this trade show were prominently marked with “patent pending.”

18. At the end of the 2012 Club Industry Show, GFE captured the attention of Mr. Michael Bruno, Chief Executive Office of Star Trac. In the middle of Star Trac’s large booth, with GFE representatives surrounded by numerous Star Trac employees, Mr. Terry Woods (Vice President of Sales and Service Operations at Star Trac) and Mr. Jeff Dilts (Senior Director of Marketing and Product Management at Star Trac) told Mr. Bruno that they wanted to have an agreement with GFE to incorporate GFE’s treadmill saver technology into Star Trac’s treadmills. Particularly, Mr. Dilts was informed by Mr. Mike Feeny (Executive Vice President at New Evolution Ventures, a co-owner of Crunch Fitness, and prior thereto, Vice President of facilities and purchasing at 24 Hour Fitness) and Mr. Patrick Regan (Vice President of Purchasing at Life Time Fitness) that if GFE’s treadmill saver technology was integrated into a treadmill they would be very interested in buying that treadmill, in large numbers, for their various clubs. Together, Mr. Feeny and Mr. Regan represented over 9,000 treadmills, at that time, at an average of at least $6,000 per treadmill (i.e., $54,000,000 in business). On information and belief, Mr. Feeny and Mr. Regan went to other manufacturers at

the trade show, including Precor, stating the same.

19. GFE and Star Trac negotiated a preliminary written license agreement, but the deal was ultimately cut short before execution by Star Trac's engineering department. Star Trac's engineers were purportedly unable to incorporate GFE's treadmill saver technology into Star Trac's treadmills in a way that legacy electronic circuitry complied with industry certification requirements.

20. In and around 2013, GFE tested, conducted studies, and gathered data with its Treadmill Saver at numerous global health club chains. GFE installed and demonstrated its Treadmill Savers at various sites and in every instance, found that a majority, if not all, of the treadmills were operating inefficiently under load and drawing excessive current and increasing operational costs. GFE has numerous reports evidencing its findings. In one such report, GFE determined that Crunch Fitness would save nearly $2,000,000 in operating costs over six years by implementing the Treadmill Saver. In electricity costs alone, Crunch Fitness would save $230,000 per year. In another report, GFE determined that the Department of Defense (DOD) could save $20,000,000 per year of taxpayer money across the 17,000 treadmills operated by the federal government. That case study yielded an invitation to meet with the Under Secretary of Defense at the Pentagon to review GFE's findings. Many of the treadmills investigated by GFE were Precor treadmills, which operated inefficiently under load.

21. Around that time, Precor treadmills were notorious for breaking down and requiring service. As one certified technician stated online, "I've been a certified Precor service tech for about 9 years now. Our company has made thousands of dollars off repairing their treadmills and ellipticals. They are just like Mercedes. They cost a lot and break down a lot. They generally put out their products without proper testing, as a result, the machines keep breaking down and have to keep getting upgrades. … Thank you for keeping us employed Precor. Please continue to design crappy over priced machines and please don't test them

properly like your competitors. On a positive note, they are good while they work." *See* http://www.treadmilltips.com/precor-treadmills-all-models-truly-garbage.html.

22. On information and belief, Precor had lost some of their market share of the health club customers in 2012 and 2013. Instead, the largest global health club chains such as 24 Hour Fitness, Life Time Fitness, Hilton, YMCA, LA Fitness, and Crunch Fitness, each of which operated up to 10,000 treadmills, if not more, bought their commercial-grade treadmills from other manufacturers such as Life Fitness, Star Trac, and Woodway. Recognizing the substantial amount of treadmills purchases health club chains could make, Precor was interested in increasing its commercial market by selling thousands of treadmills to 24 Hour Fitness, Life Time Fitness, Hilton, YMCA, LA Fitness, and Crunch Fitness, among others.

**III. Precor's Firsthand Evaluation of GFE's Treadmill Saver Technology**

23. In October of 2012, GFE met with Precor to discuss the Treadmill Saver. A copy of emails between GFE sales manager, Ms. Tina Pauley, and Precor Director of Commercial Dealers, Mr. Steve Menzel, confirming the foregoing meeting is attached as **Exhibit B**. Mr. Menzel commented that he was "excited about [GFE's] product" and that after talking about the Treadmill Saver with others at Precor, those other individuals were "excited about the product as well." *See* Exh. B.

24. By April 11, 2013, Precor installed a Treadmill Saver in its company workout room. Around the same time, a Treadmill Saver was being personally evaluated by Precor's Electrical Engineering Director, Mr. Tormay Brown. All Treadmill Saver products in Precor's possession were prominently marked with "patent pending." On information and belief, Mr. Brown or one or more other engineers at Precor were instructed to reverse engineer the Treadmill Saver in order to misappropriate and duplicate its technology. In disassembling the Treadmill Saver, one would have to remove its bottom cover, which was prominently marked with "patent pending."

25. After seeing and evaluating the Treadmill Saver, Precor incorporated GFE's Treadmill Saver technology – more particularly, the invention claimed in the '553 patent, into its products. For example, Precor's Experience Series of treadmills and EFC Elliptical Cross-trainers include "Active Status Light" technology, which reads on one or more claims of the '553 patent.

26. Precor also misappropriated GFE's global marketing materials. For example, in 2014, GFE attended a trade show where Precor's Senior Manager, Mr. Doug Durnford, was presenting Precor's Active Status Light technology. There, GFE witnessed Mr. Durnford expressly quoting content taken from GFE's sales pitch materials and case studies. Particularly, Mr. Durford discussed, among other things, research performed on treadmills at the East Bank Club in Chicago, Illinois. GFE conducted the research at East Bank Club. On information and belief, Precor has misappropriated portions of GFE's copyrighted marketing materials and research findings, and passed it off to potential customers as its own.

27. After evaluating the Treadmill Saver technology and intent on taking such as its own, Precor filed United States Provisional Patent Application No. 61/952,053 ("Precor's '053 provisional application"), on March 12, 2014, which led to United States Patent Application No. 14/656,640 ("Precor's '640 application"), filed on March 12, 2015. The Precor '053 provisional patent application and '640 patent application both erroneously name Tormay Brown, among other co-inventors, who previously evaluated GFE's Treadmill Saver. Precor's '640 application eventually issued as United States Patent No. 9,430,920, on August 30, 2016 ("Precor's '920 patent"). A true and correct copy of the '920 patent is attached as **Exhibit C**. Precor is the sole and exclusive assignee of the '920 patent, and the named inventors assigned to Precor all right, title, and interest in the '920 patent by way of an Assignment recorded with the PTO at Reel/frame 039155/0111.

28. The '920 patent discloses and claims Treadmill Saver technology,

which was conceived by GFE founder, Mr. Justin Hai. Mr. Hai is the sole inventor of the ‘553 patent. Yet, Mr. Justin Hai was not named as an inventor on Precor’s ‘053 provisional application, Precor’s ‘640 application, and Precor’s ‘920 patent.

## IV. 24 Hour Fitness Nationwide Rollout of Treadmill Saver Stalled at 11th Hour in Favor of Purchase of Precor’s “Redesigned” Treadmills with Active Light Status Technology

29. In January of 2014, GFE was beginning to have success with 24 Hour Fitness in implementing its Treadmill Saver. GFE installed Treadmill Savers on forty treadmills at 24 Hour Fitness’ Balboa gym in San Diego, California. The Balboa gym sent an email to its members touting that it was “going green” after installing the Treadmill Savers.

30. Based on the measurements taken from Treadmill Savers installed at 24 Hour Fitness, GFE determined that many, if not all, of the treadmills at 24 Hour Fitness were operating inefficiently under load and drawing unnecessary current. GFE provided 24 Hour Fitness with a “Financial Impact Summary” that estimated that a nationwide rollout of the Treadmill Saver would save 24 Hour Fitness more than $7,000,000 per year in operating costs. A true and correct copy of the Financial Impact Summary is attached as **Exhibit D**.

31. On May 15, 2014, Precor issued a press release regarding its Experience Series treadmills that “sets a new standard in state-of-the-art treadmill technology.” A true and correct copy of the press release is attached as **Exhibit E**. Precor noted that the “the Experience Series redesign was based on valuable insights from an extensive Precor study of its three primary stakeholders: commercial customers (fitness centers and spas), exercisers and service technicians. This collective feedback informed the design of its three new models – the 885, 835 and 811.” Exh. E. The redesigned Precor treadmills include an “’Active Status Light,’ the first-of-its-kind, allows facility operators and service personnel to quickly assess the operating status of a machine with a glance.” Exh. E.

32. In June of 2014, Precor demonstrated the "brand new" Experience Series treadmill to 24 Hour Fitness. A copy of emails between GFE owner Mr. Hai and Mr. Charles Huff, Vice President – Facilities & Maintenance at 24 Hour Fitness), confirming the foregoing meeting is attached as **Exhibit F**. Particularly, Mr. Huff stated on June 12, 2014, "I'd like to wait at least until the end of the month to see where things stand before we discuss possible next steps. We have a meeting with Precor later this month to see firsthand their brand new Treadmill which they claim has a light system integrated into the unit to provide generally the same info as your Treadmill Saver." Exh. F.

33. On July 29, 2014, Mr. Huff informed Mr. Hai: "We've had a lot of changes in our company since we last met and we're in the process of ordering a large number of the new Precor Treadmills which have incorporated much of the same concept as the Treadmill Saver into their newest Tread design. They have a blue light on the shroud that blinks to communicate issues similar to the green, yellow, and red of your unit. Considering we'll have these new treads in our clubs beginning next week, we'd like to take some time to review how they work and compare to what your unit offers. Based on this new info, we're not prepared to go any further with the Tread Saver as of right now." Exh. F. In August of 2014, 24 Hour Fitness notified GFE that it was not interested in purchasing any Treadmill Savers.

34. On information and belief, in order to influence 24 Hour Fitness into purchasing Precor's Experience Series treadmills, Precor falsely disparaged and/or undermined the findings in GFE's Financial Impact Summary for 24 Hour Fitness, and/or provided 24 Hour Fitness with deceptive and misleading information about the Precor Experience Series treadmills.

35. Thereafter, during the 2015 IHRSA trade show, Precor advertised its newly designed Experience Series treadmills with a "breakthrough Active Status Light [that] allows club staff to see the current operating condition of the treadmill

at a glance, helping them quickly and diagnose and resolve any issues." *See* **Exhibit G**. Precor noted that the "design and innovations in the Experience Series treadmills have made them so popular, we've added a second manufacturing shift to keep with sales demand. You'll find them in every corner of the world, from 24 Hour Fitness in North America to Hosa Fitness in China." Exh. G.

**FIRST CLAIM FOR RELIEF**

**(Infringement of the '553 Patent Against All Defendants)**

36. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

37. The '553 patent has an effective filing date of October 29, 2011. Accordingly, the "first to invent" laws of the United States (and not the "first to file" laws of the America Invents Act, which went into effect March 16, 2013) govern the presumed validity of the '553 patent.

38. Precor, and/or those acting in concert with Precor including, but not limited to 24 Hour Fitness, with actual knowledge of the '553 patent before the filing of this action, have intentionally infringed and continue to infringe, contribute to infringement, and/or induce infringement of the '553 patent, either literally or under the doctrine of equivalents. Defendants' infringing activities in the United States and this District include, among other things, making, using, importing, exporting, selling, and/or offering to sell methods and/or systems, including, but not limited to (1) Precor's Experience Series of treadmills, (2) Precor's EFC Elliptical Cross-trainers, and (3) any other exercise equipment that employs Precor's "Accurate Belt Wear Detection" and/or "Active Status Light" technology (collectively, the "Accused Products"), which infringe at least claim 1 of the '553 patent as indicated in the attached claim chart, **Exhibit H**, incorporated herein. This infringement chart is based on GFE's current understanding of the Accused Products, which only considers publicly available information. The chart does not

set forth all of GFE's infringement theories – the Accused Products embody other claims set forth in the '553 patent.

39. GFE reserves the right to amend or supplement its infringement theories upon more information becoming available through formal discovery and/or this Court completing its claim construction proceedings. Pursuant to CivLR 3.1, GFE will serve a Disclosure of Asserted Claims and Infringement Contentions (that may alter and/or supplement the infringement chart submitted herewith).

40. Precor, and/or those acting in concert with Precor, with actual knowledge of the '553 patent before the filing of this action, contributed to the infringement of the '553 patent, by having its direct and indirect customers such as 24 Hour Fitness sell, offer for sale, use, and/or import into the United States and this District, and placing into the stream of commerce, the Accused Products, and having the specific intention to induce those direct and indirect customers to infringe at least claim 1 of the '553 patent by instructing and promoting the use of the Accused Products.

41. The Accused Products are especially made or adapted to include Precor's "Active Status Light" and/or "Accurate Belt Wear Detection" technology, such that they infringe the '553 patent, and have no substantially non-infringing uses.

42. Precor, and/or those acting in concert with Precor, with actual knowledge of the '553 patent before the filing of this action (and the application maturing to the '553 patent), have intentionally induced infringement of the '553 patent, by having its direct and indirect customers sell, offer for sale, use, and/or import into the United States and this Judicial District, and placing into the stream of commerce, the Accused Products, with knowledge that such products infringe the '553 patent.

43. Precor was aware or should have been aware or was willfully ignorant of the existence of the '169 application by at least October of 2012. 24 Hour Fitness

was aware or should have been aware or was willfully ignorant of the existence of the ’169 application by at least January of 2014.

44. GFE has complied with the notice provisions of the patent statutes by providing Precor additional notice of patent ownership and charges of infringement concerning Precor’s products. Namely, on November 19, 2014, GFE’s representative, Mr. Andrew Skale, advised Precor’s President, Mr. Rob Barker, that one or more of Precor’s products infringed at least one of the claims of the ‘553 patent. A true and correct copy of the notice letter from Mr. Andrew Skale to Mr. Rob Barker is attached hereto as **Exhibit I**.

45. Defendants had actual notice of the ’553 patent since at least November 19, 2014, before the filing of this action, and acted despite an objectively high likelihood that its actions constituted infringement. Despite knowledge of the ’553 patent, Precor has not made any changes to the relevant operation of the Accused Products, but continues to recklessly, willfully, and/or deliberately manufacture, distribute and sell products that infringe the ’553 patent.

46. Upon information and belief, Precor has generated significant sales of products incorporating the Plaintiff’s technology, exposing Precor to significant liability for its infringement of the ’553 patent.

47. Upon information and belief, unless enjoined, Defendants, and/or others acting on behalf of Defendants, will continue their infringing acts, thereby causing irreparable harm to GFE for which there is no adequate remedy at law.

48. As a result of Defendants’ infringement of the ’553 patent, GFE has suffered and will continue to suffer harm and injury, including monetary damages in an amount to be determined at trial, and is entitled to recovery of all said damages.

///

///

///

## SECOND CLAIM FOR RELIEF

### (Correction of Inventorship of Precor's '920 Patent Against Precor)

### (35 U.S.C. § 256)

49. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

50. Justin Hai is the founder, owner, and Manager of GFE.

51. Justin Hai is responsible for the conception of all of the claimed subject matter of the '920 patent. Justin Hai was under no obligation to assign his works of invention to Precor, and retained all rights to knowledge, processes, and apparatuses known to him before his business dealings with Precor. The claimed subject matter of the '920 patent reflects inventions known and conceived by Justin Hai and disclosed by him to Precor.

52. Pursuant to an employee agreement with GFE, Justin Hai has assigned any and all of his rights to the '920 patent to GFE. Accordingly, GFE has an ownership interest in the '920 patent.

53. Justin Hai is responsible for the conception of all of the inventions forming the claimed subject matter of the '920 patent. In the alternative, Justin Hai is responsible for the conception of one or more of the inventions forming the claimed subject matter of the '920 patent.

54. Without deceptive intent, Justin Hai was incorrectly not named as the sole inventor of the claimed subject matter of the '920 patent. In the alternative, without deceptive intent, Justin Hai was incorrectly not named as a co-inventor of the subject matter of the '920 patent.

55. The '920 patent should be corrected to reflect that Justin Hai is the sole inventor thereon, or, in the alternative, that Justin Hai is a co-inventor of the subject matter of the '920 patent, and Justin Hai should be accorded any other remedies due him under U.S. patent law.

## THIRD CLAIM FOR RELIEF

**(False Advertising under 15 U.S.C. § 1125(a) Against Precor)**

56. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

57. Mr. Hai discovered and developed active status light technology. Precor did not discover active status light technology.

58. The acts of Precor alleged herein, including falsely advertising "first-of-its-kind" and "breakthrough Active Status Light" in connection with the Accused Products for the purpose of increasing sales and profits, constitute false advertising in violation of 15 U.S.C. § 1125. Precor knew that GFE invented Active Status Light technology and that such statements were false and misleading.

59. Precor's advertisements of "first-of-its-kind" and "breakthrough Active Status Light" in connection with the Accused Products deceives or has the tendency to deceive consumers and is for the purpose of inducing, or is likely to induce, directly or indirectly the purchase of the Accused Products from Precor.

60. Advertising "first-of-its-kind" and "breakthrough Active Status Light" influences purchasing decisions by potential consumers.

61. Precor placed its false "first-of-its-kind" and "breakthrough Active Status Light" statements into interstate commerce.

62. GFE has been or is likely to be injured as a result of Precor's false "first-of-its-kind" and "breakthrough Active Status Light" statements, either by direct diversion of sales to Precor or by a lessening of goodwill associated with GFE's products.

63. As a direct and proximate result of the aforesaid false statements, GFE has and will continue to suffer great harm and damage. GFE has incurred and will continue to incur irreparable harm unless Precor is enjoined from further commission of false advertising.

64. As a result of Precor's misconduct, GFE has been damaged in an amount subject to proof at trial, but in excess of the jurisdictional requirement of the Court. At a minimum, however, GFE is entitled to injunctive relief, corrective advertising, and reasonable attorney's fees and costs.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**(Common Law Unfair Competition Against Precor)**

65. Plaintiff realleges and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

66. This claim is for unfair competition under California common law.

67. The acts of Precor alleged herein, including falsely advertising "first-of-its-kind" and "breakthrough Active Status Light" in connection with the Accused Products for the purpose of increasing sales and profits, constitute unlawful, unfair, and fraudulent business practices in violation of California common law.

68. As a direct and proximate result of the aforesaid deceptive business practices, GFE has and will continue to suffer great harm and damage. GFE has incurred and will continue to incur irreparable harm unless Precor is enjoined from further commission of unfair and unlawful business acts and practices.

69. As a result of Precor's misconduct, GFE has been damaged in an amount subject to proof at trial. At a minimum, however, GFE is entitled to injunctive relief, and an accounting of Precor's profits. Further, in light of the deliberately malicious use of "first-of-its-kind" and "breakthrough Active Status Light," GFE is also entitled to punitive and exemplary damages.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**(Statutory Unfair Competition Against Precor)**

70. Plaintiff realleges and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth

herein.

71. This claim is for statutory unfair competition in violation of California Business & Professions Code § 17200 *et seq*.

72. The acts of Precor alleged herein, including falsely advertising "first-of-its-kind" and "breakthrough Active Status Light" in connection with the Accused Products for the purposes of increasing sales and profits, constitute unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200 *et seq*.

73. As a direct and proximate result of the aforesaid deceptive business practices, GFE has and will continue to suffer great harm and damage. GFE has incurred and will continue to incur irreparable harm unless Precor is enjoined from further commission of unfair and unlawful business acts and practices.

74. GFE is informed and believes and based thereon alleges that by virtue of Precor's acts of unfair competition in violation of California Bus. & Prof. Code § 17200 *et seq.*, Precor has derived and continues to derive gains, profits and advantages in an amount subject to proof at trial, but in excess of the jurisdictional requirement of the Court.

75. Due to Precor's acts constituting unfair competition, GFE has suffered and continues to suffer great and irreparably injury for which there is no adequate remedy at law. GFE is entitled to injunctive relief and to restitution and disgorgement of Precor's ill-gotten gains, including Precor's profits, and to recover Precor's damages, costs and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF

**(Unjust Enrichment Against Precor)**

76. Plaintiff realleges and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

77. Mr. Hai is the inventor of all claims of the '920 patent.

78. Precor denied GFE the rights and privileges of ownership of the invention(s) claimed in the ‘920 patent, and used, benefitted and/or profited from the patented invention(s) without GFE’s authorization.

79. As a direct and proximate result of denying GFE’s rights and privileges of ownership of the invention(s) claimed in the ‘920 patent, Precor has been unjustly enriched by the use, benefit, and/or profits derived from the patent inventions, at GFE’s expense and to its detriment.

## SEVENTH CLAIM FOR RELIEF

## (Declaratory Relief)

80. Plaintiff realleges and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

81. A dispute exists as to true ownership of the ‘920 patent.

82. GFE is entitled to a declaration that Mr. Hai is the sole inventor and GFE is the sole owner of the ‘920 patent, or in the alternative, Mr. Hai is a co-inventor and GFE is the co-owner of the ‘920 patent.

83. GFE is entitled to a declaration that Defendants infringe the ‘553 patent.

## EIGHTH CLAIM FOR RELIEF

## (Constructive Trust and Accounting)

84. Plaintiff realleges and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

85. By reason of Precor’s conduct as alleged herein, Precor is an involuntary trustee holding the ‘920 patent and profits and benefits therefrom in constructive trust for GFE with the duty to convey the same to GFE. Precor is obligated to provide an accounting to GFE reflecting all monies and benefits received as a result of owning the ‘920 patent, including but not limited to,

licensing royalties and/or fees, lower costs of capital, grant awards, preferred lending terms, and other pecuniary gain.

**PRAYER FOR RELIEF**

WHEREFORE, GFE prays for entry of judgment in its favor and against Defendants as follows:

(a) An Order adjudging Defendants to have infringed the ‘553 patent under 35 U.S.C. § 271;

(b) An Order adjudging Defendants to have willfully infringed the ‘553 patent under 35 U.S.C. § 271;

(c) A permanent injunction under 35 U.S.C. § 283 enjoining Defendants, their officers, directors, agents, servants, resellers, retailers, employees and attorneys, and those persons acting in concert or participation with them, from infringing the ‘553 patent in violation of 35 U.S.C. § 271;

(d) A permanent injunction enjoining Defendants, their officers, directors, agents, servants, resellers, retailers, employees and attorneys, and those persons acting in concert or participation with them, from making, using, selling, offering for sale, exporting, and importing the Accused Products;

(e) An award to GFE of its lost profits and/or a reasonably royalty for Precor’s sales of the Accused Products;

(f) An award to GFE of a reasonably royalty for 24 Hour Fitness’ use of the Accused Products by its members;

(g) An order for a trebling of damages and/or enhanced damages due to Defendants’ willful infringement under 35 U.S.C. § 284;

(h) An Order adjudicating that this is an exceptional case;

(i) An award to GFE of all attorneys’ fees and costs incurred by GFE in connection with this action under 35 U.S.C. § 285;

(j) An award of pre-judgment and post-judgment interest and costs of this action against Defendants;

(k) Declaring that Mr. Hai is the true and sole inventor of the '920 patent;

(l) For a directive to issue to the Commissioner of the United States Patent & Trademark Office instructions to issue a Certificate of Correction in connection with the '920 patent attesting to the fact that Mr. Hai was omitted as inventor on the '920 patent and correcting that error by designating Mr. Hai as the sole inventor or a joint inventor;

(m) Declaring that GFE is the owner or co-owner of the '920 patent or alternatively, declaring that GFE holds the '920 patent as constructive trustee for the benefit of GFE;

(n) An Order requiring Precor to correct its false advertising at its own expense;

(o) An award to GFE of its actual damages due to Precor's false advertising and/or unfair competition; and

(p) For such other and further relief as the Court deems just and proper.

Dated: February 8, 2017 SAN DIEGO IP LAW GROUP LLP

By: /s/Trevor Coddington/
DAVID M. BECKWITH
JAMES V. FAZIO, III
TREVOR Q. CODDINGTON, PH.D.

Attorneys for Plaintiff,
GREEN FITNESS EQUIPMENT COMPANY, LLC

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: February 8, 2017

SAN DIEGO IP LAW GROUP LLP

By: /s/Trevor Coddington/
DAVID M. BECKWITH
JAMES V. FAZIO, III
TREVOR Q. CODDINGTON, PH.D.

Attorneys for Plaintiff,
GREEN FITNESS EQUIPMENT COMPANY, LLC